IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | LEAD CASE NO. 12-10123(ESL) |
| ALEIDA HERNANDEZ GUTIERREZ | CHAPTER 13 |
| Debtor | |
| ALEIDA HERNANDEZ GUTIERREZ | ADV. PROC. NO. 13-00089 (ESL) |
| Plaintiff | |
| vs. | |
| POPULAR AUTO, INC. | |
| Defendant | |
| ALEJANDRO OLIVERAS RIVERA | |
| Chapter 13 Trustee | |

OPINION AND ORDER

This case is before the court upon the Plaintiff's *Motion for Reconsideration and to Alter and Amend Opinion and Order Pursuant to Rule 59(E) and Bankruptcy Rule 9023* (the "*Motion for Reconsideration*", Docket No. 59) and the *Opposition* thereto (Docket No. 65) filed by Defendant Popular Auto, Inc. ("Defendant" or "Popular Auto"). The *Opinion and Order* was entered on August 8, 2014 at Docket No. 57 (the "*Opinion and Order*")[1].

The Plaintiff contends in the *Motion for Reconsideration* that: (a) several uncontested facts were not listed in the *Opinion and Order*; (b) the factors of the "bright line" test that the Plaintiff claims to meet are not the ones listed in the *Opinion and Order*; (c) the argument of a conflict between the Puerto Rico Uniform Commercial Code ("UCC") and the Act to Regulate Personal Property Contracts (the "Lease Act") was raised by the Defendant, not the Plaintiff, as the *Opinion and Order* states; (d) the Plaintiff did not allege that the entire Act to Regulate Personal Property Contracts was repealed, as the *Opinion and Order* states; (e) there is an incomplete sentence at page 11 of the *Opinion and Order*; (f) the court erred in applying the

---

[1] The instant *Opinion and Order* clarifies, supplements and amends the *Opinion and Order* entered on August 8, 2014, 2014 Bankr. LEXIS 3379, 2014 WL 3888277 (Bankr. D.P.R. 2014).

"*special trumps general*" rule of construction since the *Opinion and Order* does not state that the UCC is in conflict with the Lease Act nor does it indicate the provisions that are in conflict; (g) even if the court finds that the laws are in conflict, then the court erred by not applying the conciliation (harmonize) approach to the conflicting laws before setting aside in its entirety the provisions of the UCC; (h) the court erred in holding that the Lease Act trumps the application of the UCC; (i) the court erred by classifying the agreement based on the "intention of the parties" rather than on the "bright line" test found in UCC; (j) the court erred in applying the elements of a waiver via summary judgment when intent is a factual issue in controversy; and (k) the rationale of Nieves Vélez v. Bansander, 136 D.P.R. 827 (1994), is not the applicable law today because the law was amended after that case to state that the lessor is not liable for the damages that the lessee may cause to third parties while operating the motor vehicle.  The court will address each argument separately.

*(A)    Additional Findings of Fact*

Findings of fact serve three purposes: "(1) aiding the trial court's adjudication process by engendering care by the court in determining the facts; (2) promoting the operation of the doctrines of *res judicata* and estoppel by judgment; and (3) providing findings explicit enough to enable appellate courts to carry out a meaningful review." Garner v. Kennedy, 713 F.3d 237, 242-243 (5th Cir. 2013).

Although the Plaintiff did not denominate any particular rule as the springboard for her request for additional findings of fact, the governing rule is F. R. Civ. P. 52(c), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7052, which also substitutes the 28-day deadline for filing such request to 14 days.  Fed. R. Civ. P. 52(c) provides as follows:

> On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings --or make additional findings-- and may amend the judgment accordingly.  The motion may accompany a motion for a new trial under Rule 59.

The Plaintiff requests the following set of facts to be included in the *Opinion and Order*:

(1) Pursuant to the terms of the terms of the contract, the residual value assigned to the property is $0.00 (*Amended Complaint*, ¶ 13; *Answer to Amended Complaint*, ¶ 13).

(2) Although the agreement at issue is labeled as a "Lease Agreement", the plaintiff has the option to become the owner of the property for no additional consideration (*Amended Complaint*, ¶ 30; *Answer to Amended Complaint*, ¶ 30).

(3) In addition, pursuant to the terms of the agreement, the defendant retained no residual interest in the vehicle[2] at the end of the contract (*Amended Complaint*, ¶ 31; *Answer to Amended Complaint*, ¶ 31).

(4) Defendant knew that, pursuant to the terms of the agreement, plaintiff was entitled to become the owner of the vehicle for no additional consideration (*Amended Complaint*, ¶ 39; *Answer to Amended Complaint*, ¶ 39).

(5) Defendant knew that, pursuant to the terms of the agreement, it would retain no residual interest in the vehicle at the end of the contract (*Amended Complaint*, ¶ 40; *Answer to Amended Complaint*, ¶ 40).

(6) On fifth page of the document attached to Proof of Claim No. 4-2, under paragraph no. 24 there are two (2) paragraphs that appear in capital letters. The first of these paragraphs in capital letters states that[3]:

> BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT: (I) YOU HAD THE OPPORTUNITY TO DISCUSS THE TERMS AND CONDITIONS OF THIS LEASE WITH US BEFORE SIGNING; (II) YOU HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS LEASE; (III) THIS LEASE IS A NET LEASE THAT IS NOT SUBJECT TO TERMINATION OR CANCELLATION; (IV) YOU HAVE AN UNCODITIONAL OBLIGATION TO MAKE THE PAYMENTS THAT ARE DUE PURSUANT TO THIS LEASE AND YOU CANNOT RETAIN, COMPENSATE OR REDUCE SUCH PAYMENTS FOR ANY REASON.

Docket No. 59, pp. 3-4.

The Defendant did not contest the veracity of these additional findings of fact, but rather alleged that they are "inconsequential or irrelevant to the decision made by the court. The Defendant alleges that as per the ruling of the court that the Plaintiff waived her rights under

---

[2] The vehicle is a 2006 Nissan Frontier (the "Vehicle").

[3] The court notes that the copy of the *Lease Agreement* provided in Proof of Claim No. 4-2 and Docket No. 42, pp. 8-13, is in Spanish and no certified translation has been filed. The translated portions transcribed herein were provided by the Plaintiff. Although the court will consider this document for the purposes of this *Order*, should any party take an appeal, the certified English translation must be provided.

[Puerto Rico's Commercial Transactions Act ("CTA")], there is no need to analyze the issue again under the CTA provisions and the 'bright line' test as allege by the Plaintiff.  The purpose of the Plaintiff with such inclusion is to convince the court to change its position towards the analysis under the CTA that the court already discarded."  Defendant's *Opposition*, Docket No. 65, pp. 16-17, ¶ 20.

Because the Defendant does not dispute the veracity of these facts, and to serve the purposes of findings of fact, the Plaintiff's request for additional findings of fact is hereby granted, except for the one labeled (2) because, as drafted, it is not a fact but a conclusion.

*(B)*     *The factors of the "Bright Line" Test that the Plaintiff claims to meet are not the ones listed in the Opinion and Order*

The *Opinion and Order* states as follows:

> The Plaintiff argues that pursuant to Section 1-201 of the Puerto Rico Commercial Transactions Act, 19 L.P.R.A. § 451(37), which adopts UCC § 1-201(37), she complies with a "bright line" test [which determines whether] a transaction in the form of a "lease" creates a security interest as a matter of law based upon the terms of the transaction.  She claims to meet the following requirements: "(a) the original term of the lease is equal to or greater than the remaining economic life of the goods; (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods; (c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or (d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement."  Id.  Hence, the Plaintiff claims to be the sole proprietor of the Vehicle and that Popular Auto is only a secured creditor not a lessor.

Docket No. 57, p. 9, lines 6-18.

The Plaintiff alleges that such summary is inaccurate.  Instead, she argues that "[t]he requirements listed [in the *Opinion and Order*[4]] are the residual value factors that are found in § 1-201(37) of PR-UCC.  These factors constituted the second prong of the bright line test.  The first prong of the test is to determine if the Lease is subject to cancellation by the lease.  If this first prong is satisfied, then the Court must see if at least one of the residual value factors is also

---

[4] The *Opinion and Order* denied the application of the "bright line" test altogether.

-4-

present." Plaintiff's *Motion for Reconsideration*, Docket No. 59, p. 4. She requests the court to clarify her position in the *Opinion and Order* that she complies with the bright line test as follows:

> (1) **The first prong of the test** which is that: "the consideration the lessee bound is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee", and
>
> (2) **That one (1) out of the four (4) residual value factors** is present (the second prong of the test) which is that: "the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement."
>
> *Motion for Reconsideration,* Docket No. 59, p. 5, quoting the *Motion for Judgment on the Pleadings*, Docket 41, pp. 10-13.

In short, the Plaintiff attests that the she meets the bright line test by satisfying the first prong of the test (that the lease is not subject to cancellation) and, at least, one (1) of the residual value factors (that the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement). She requests the *Opinion and Order* to make such distinction and insists that the *Lease Agreement* subscribed by the parties is not a true lease but a disguised security transaction under the UCC, which would make her the true owner of the Vehicle and the Defendant a secured creditor.

The Defendant replies that the "determination of how many requirements of the 'bright line' test were met or not (one, two, four), are irrelevant or inconsequential to the dispute. The determination by the court that the Plaintiff waived her rights under the CTA precludes the application of any of those requirements. There is no analysis to perform under any of the provisions of the CTA or the case law cited by the Plaintiff regarding the judicial interpretation of similar legislation in other states." Defendant's *Opposition*, Docket No. 65, p. 17, ¶ 21.

The *Opinion and Order* ultimately declined to apply the bright line test and instead ruled that "the Plaintiff waived any right she may have had under the Puerto Rico Commercial Transaction Act of 1996 to the extent that they are provided for in the Act to Regulate Personal

Property Lease Contracts" (Docket No. 57, p. 10, lines 26-27, and p. 11, lines 1-2).  Therefore, the court agrees with the Defendant in this regard.  Notwithstanding, for purposes of clarity, the court will amend the *Opinion and Order* to include the clarification requested by the Plaintiff as stated above.

*(C)    The argument of a conflict between Puerto Rico's UCC and the Act to Regulate Personal Property Contracts was raised by the Defendant, not the Plaintiff, as the Opinion and Order states*

The Plaintiff alleges that "[i]t was [D]efendant [], not the [P]laintiff, who brought the allegation of conflict between laws in its 'Opposition to the Motion for Judgment on the Pleadings' (See Docket 42, ¶ 8).  Plaintiff's position as averred in the *Complaint* and in the *Motion for Judgment on the Pleadings* is that the applicable law is PR-UCC, and did not argued [*sic*] that such law was in conflict with any other law." *Motion for Reconsideration*, Docket No. 59, p. 6.

The Defendant's *Opposition to Plaintiff's Motion for Judgment on the Pleadings*, however, did not even include the word "conflict".  See Docket No. 42.  What the Defendant alleged was that the CTA is not applicable because the Plaintiff expressly waived any right she may have had under it, if any, and that the applicable law was Puerto Rico's Act to Regulate Personal Property Lease Contracts, 10 L.P.R.A. §§ 2401 *et seq*.  See Docket No. 42, pp. 5-7, ¶¶ 6-8.

The first mention of the word "conflict" was used by the Plaintiff in her *Reply to Defendant's Opposition to Motion for Summary Judgment* as follows: "Puerto Rico's Commercial Transactions Act (CTA) provides that any law or portion thereof in **conflict** with the CTA has been repealed" (Docket No. 46, p. 2, ¶ 3, emphasis added).  From that premise, the Plaintiff asserts that the CTA "trumps the application of the 'Act to Regulate Personal Property Lease Contracts'" because "Article 17 of PR Law 241-1996 specifically provides a list of Laws that were repealed with the approval of the CTA, and a general statement expressing that 'any

other law or part thereof which is inconsistent with this Law, are hereby repealed'" (Docket No. 46, p. 2, Section A).

Therefore, the Plaintiff's request to "to correct the *Opinion [and Order]* to reflect that it was the [D]efendant, not the [P]laintiff, who alleged that there was a conflict of laws" (Docket No. 59, p. 6) is hereby denied.  Notwithstanding, which party raised the conflict issue is irrelevant to the conclusion reached by the court that the Plaintiff waived her rights under the Puerto Rico Commercial Transactions Act.  The court may *sua sponte* discuss the conflict issue when analyzing the and discussing the applicable law.

*(D)      The Plaintiff did not allege that the entire Act to Regulate Personal Property Contracts was repealed, as the Opinion and Order states*

In her *Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings*, the Plaintiff alleged that: (a) Article 17 of PR Law 241-1996 specifically provides a list of Puerto Rico laws that were repealed with the approval of the CTA; (b) "[i]n the instant case, if, as the [D]efendant points[5], there is a conflict between the CTA and the Act to Regulate Personal Property Lease Contracts, then the Court must conclude that the provisions of the latter statute were repealed and/or supersede by the provisions of the CTA"; and (c) "[a]ny other result would be completely inconsistent with the objective of approving the CTA which was to adopt the **Uniform** Commercial Code in Puerto Rico" (Docket No. 46, p. 2, Section A, original bold).

In her *Motion for Reconsideration*, however, the Plaintiff argues that her "position [] is that the applicable law is PR-UCC, [that she] did not argued [*sic*] that such law was in conflict with any other law" and that "if such conflicted [*sic*] existed (which the plaintiff submits that there is none), then the PR-UCC prevails pursuant to Article 17 of Act 241-1996" (Docket No. 59, p. 7).

As previously noted, the court only considered the "conflict of law" argument because it was raised by the Plaintiff, not the Defendant.  Upon the Plaintiff's assertions in her *Motion for*

---

[5] As previously noted, it was the Plaintiff who alleged such conflict, not the Defendant.  See Section C of the instant *Order*, *supra*.

*Reconsideration*, the court now notes the Plaintiff's current position as it relates to Section E of the *Opinion and Order* to the extent that it deals with the conflict of the UCC and the Puerto Rico Act to Regulate Personal Property Lease Contracts and whether or not to Article 17 of Act 241-1996 repealed it.

The court declines to revisit the issue in light of the Plaintiff's allegations in the *Motion for Reconsideration* as the same will not change the ultimate conclusion, that is, that she waived her rights under the CTA.

(E)     *There is an incomplete sentence at page 11 of the Opinion and Order*

The Plaintiff indicates that "there is a sentence that begins on line 3 and finishes on line 4 without being completed." Upon review of the *Opinion and Order*, the court proceeds to amend it to complete the sentence as follows:

> In addition, the *Lease Agreement*, like any contract in Puerto Rico, is the law between the parties. See Article 1044 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 2994; Treco, Inc. v. Marina de Palmas, Inc., 626 F. Supp. 335, 342 (D.P.R. 1986) ("Contracts are law between the parties."); Garita Hotel Ltd. Pshp. v. Ponce Fed. Bank, F.S.B., 954 F. Supp. 438, 451 (D.P.R. 1996) ("A contract has the force of law between the parties to it."); Rodríguez Ramos v. E.L.A., 2014 T.S.P.R. 32 at * 6, n. 1.

(F)     *The court erred in applying the "special trumps general" rule of construction since the Opinion and Order does not state that the UCC is in conflict with the Lease Act nor does it indicate the provisions that are in conflict*

The Plaintiff contends that the court "erred in declining to apply PR-UCC to the facts of the instant case pursuant to the '*special trumps general*' rule of construction" because it had not indicated "that PR-UCC is in conflict with the Lease Act nor [did it] indicate [] the specific provisions of each of the laws that [were] in conflict" (Docket No. 59, pp. 8-9, Section F).

Upon this court's ruling in Sections C and D, *supra*, this issue will not be addressed.

(G)     *Even if the court finds that the laws are in conflict, then the court erred by not applying the conciliation (harmonize) approach to the conflicting laws before setting aside in its entirety the provisions of the UCC*

The Plaintiff attests that "[e]ven considering that the [] Court did determined [*sic*] that the laws where [*sic*] in conflict, the plaintiff submits that this [] Court erred in not applying the

conciliation approach to the conflicting statutes". *Motion for Reconsideration*, Docket No. 59, p. 9, Section G.

Upon this court's ruling in Sections C and D, *supra*, this issue will not be addressed.

*(H)* *The court erred in holding that the Lease Act trumps the application of the UCC*

The Plaintiff avers that "[e]ven if this Court finds that there is conflict between the Lease Act and PR-UCC, the plaintiff submits that this [] Court erred in holding that the Lease Act trumps PR-UCC, since (1) PR-UCC is the more recent law, (2) PR-UCC is the special law, and (3) PR-UCC states that it prevails over any other rule in conflict." *Motion for Reconsideration*, Docket No. 59, p. 12, Section H.

Upon this court's ruling in Sections C and D, *supra*, this issue is now moot.

*(I)* *The court erred by classifying the agreement based on the "intention of the parties" rather than on the "bright line" test found in UCC*

The Plaintiff "submits that classifying the [lease] agreement based on the intention of the parties is incorrect." *Motion for Reconsideration*, Docket No. 59, p. 16, Section I. She contends that pursuant to the rationale in In re QDS Components, 292 B.R. 313 (Bankr. W.D. Oh. 2002), this court "erred in classifying the [*Lease Agreement*] based on any other grounds that are not the objective economic factors outlined on PR-UCC §1-201(37). In the instant case, the intention of the parties or the form of the document are not the controlling factors to be analyzed to determine if a security interest was created or not. Ultimately, what must be evaluated is whether the lessor retains a meaningful residual interest at the end of the contract. In the instant case, the lessor is compelled to transfer title to the lessee for no additional consideration. Pursuant to PR-UCC §1-201(37) and the applicable case law, this means that security interest was created, and therefore, the plaintiff may pay such claim through the plan." *Motion for Reconsideration*, Docket No. 59, p. 18-19, Section I.

The Defendant counters that "[t]he signing of the waivers or releases … [in the *Lease Agreement*] … barred [the Plaintiff] to prosecute or litigate [her] complaint under federal and state laws", which "left [her] with no cause of action to pursue", and that "we cannot change the

facts of the case to accommodate her position." *Opposition to Motion for Reconsideration*, Docket No. 65, p. 19, ¶ 24.

"The issue of true lease versus installment sales contract has been characterized as 'one of the most vexatious and oft-litigated issues under the Uniform Commercial Code'. As a result, the case law is comprised of a disjointed patchwork of decisions that simply cannot be reconciled.'" Rentrak Corp. v. Ladieu (In re Ladieu), 2011 Bankr. LEXIS 721 at* 28, 2011 WL 748566 at *10 (Bankr. D. Vt. 2011), quoting In re UNI Imaging Holdings, LLC, 423 B.R. 406, 414 (Bankr. N.D.N.Y. 2010). Also see Ronald M. Bayer, Personal Property Leasing: Article 2A of the Uniform Commercial Code, 43 Bus. Law. 1491, 1497 (August 1988) (referring to an "enormous amount of confusion" in the case law); Michael W. Gaines, Security Interests Under Article 2A: More Confusion in the Leasing Arena, 18 Stetson L. Rev. 69, 69 (Fall 1988) (describing "the plethora of litigation regarding lease agreements and leased equipment"); Peter J. Coogan, Reflections of a Drafter, 43 Ohio St. L.J. 545, 550 (1982) (observing that courts "struggle with the idea of whether a lease with certain attributes is a 'true lease' " and noting the existence of "loads of cases that just cannot be reconciled").

"[T]he determination of whether a contractual agreement is to be characterized as either a lease or security arrangement is a matter of state law." In re UNI Imaging Holdings, LLC, 423 B.R. at 414. Paragraph 18 of the *Lease Agreement* provides that it shall be governed and construed in accordance with the Laws of the Commonwealth of Puerto Rico. See Docket No. 42, p. 12, ¶ 18.

"The Model Uniform Commercial Code ('UCC') was created in 1952 and consists of uniform rules coordinating the sale of goods and other commercial transactions throughout the 50 United States. It was created by the National Conference of Commissioners on Uniform State Laws and the American Law Institute. It is not an enforceable law unless it is expressly adopted through state legislation. Its goal is to simplify commercial transactions and to make commercial paper transactions less complex and uniform." In re Nat'l Promoters & Servs., 499 B.R. 192, 200 (Bankr. D.P.R. 2013). Hence, "due to the presence of large financial institutions

-10-

from the continental United States doing business in the island, Puerto Rico enacted Act No. 208 on August 17, 1995, also known as the 'Commercial Transactions Act', to adopt portions of Sections 1, 3, 4 and 4A of the Model UCC.  See the Exposition of Motives of Puerto Rico's Act No. 208 of August 13, 1995.  About a year later, on September 19, 1996, Puerto Rico's Commercial Transactions Act was amended through Act No. 241 (the Secured Commercial Transactions Act) to further adopt, *inter alia*, several sections of Article 9 of the UCC.  See the Exposition of Motives of Puerto Rico's Act No. 241 of September 19, 1995."  Id. at 200-201.

Section 1-201(37) of the Puerto Rico UCC, codified as Section 1-201 of the CTA, PR Act No. 208 of August 17, 1995, as amended through Section 1 of PR Act No. 176 of August 31, 1996, establishes as follows:

> Subject to additional definitions contained in §§ 401 *et seq.* of this title, which are applicable to specific chapters or subchapters thereof, and unless the context otherwise requires, in §§ 401-458 of this title[6]:
>
> …
>
> (37) *Security interest.*— Means a right *in rem* in personal property or real property by destination which secures payment or performance of an obligation.  The term also includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to the provisions of Chapter 9.  The right of a seller or lessor of goods, if any, to retain or acquire possession of the goods is not a "security interest", but a seller or lessor may also acquire a "security interest" by complying with Chapter 9.  The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a "security interest".
>
> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:
>
> > (a) The original term of the lease is equal to or greater than the remaining economic life of the goods;

---

[6] Act No. 21 of January 17, 2012 amended the PR UCC Section 1-201(37), *supra*, only to amend the first paragraph generally as follows:

> Subject to additonal definitions contained in the subsequent chapters of this subtitle, which are applicable to specific chapters or subchapters thereof, and unless the context otherwise requires, in this subtitle:

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that:

(a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(b) the lessee assumes the risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods;

(c) the lessee has an option to renew the lease or to become the owner of the goods;

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection:

(A) Additional consideration is not nominal if: (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(B) *Reasonably predictable and remaining economic life of the goods.*— Are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(C) *Present value.—* Means the amount as of a date certain [*sic*] of one or more sums payable in the future, discounted to the date certain [*sic*]. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

19 L.P.R.A. § 451(37).

The 1987 revisions to Section 1-201(37) of the Model UCC, which is the version that Puerto Rico adopted, had shifted the focus of the characterization issue to the economics of the transaction by deleting all references to the parties' intent. "The Editor's Note to the 1987 Amendment states that 'reference to the intent of the parties to create a lease or security interest has led to unfortunate results. … Accordingly, amended Section 1-201(37) deletes all reference to the parties' intent. … All of these [newly-codified] tests focus on economics, not the intent of the parties." In re Homeplace Stores, 228 B.R. 88, 93 (Bankr. D. Del. 1998), quoting from U.C.C. § 1-201(37) Off. Cmt. (amended 1987). Also see Hanes v. Vital Prods. Co. (In re Vital Prods. Co.), 210 B.R. 109, 112 (Bankr. N.D. Ohio 1997) ("The present version of U.C.C. § 1-201(37) has shifted the focus from 'the intent of the parties' to the economic realities of a given transaction"). Hence, several commentators have recognized that, as a result of the 1987 amendment to Model UCC § 1-201(37), the intent of the parties is no longer a factor in an analysis under § 1-201(37). For instance, commenting on the analysis under revised § 1-201(37), Professors White and Summers advise that "whether a document is a security agreement as opposed to a lease is dependent on certain factors extrinsic to the document and not capable of control by words in the document." In re Homeplace Stores, 228 B.R. at 93, citing 2 James J. White & Robert S. Summers, Uniform Commercial Code 565 (4th ed. 1995 & Supp. 1998). "Professors White and Summers, in commenting on the old version of § 1-201(37) which asks whether the lease 'was intended as security', state that the old version of the section 'focused improperly on the actual, subjective intention of the parties when they drafted the contract, rather than on the substance of the transaction.'" In re Homeplace Stores, 228 B.R.

at 93, citing 4 James J. White & Robert S. Summers, *supra*, at 11. Professor Richard L. Barnes explained the 1987 amendments to Section 1-201(37) of the Model UCC as follows:

> What had been a test of intention has become a test of economic realities; that is, intention has been dropped from section 1-201(37). In its place is an economic factors test. Thus, the parties to a transaction may create a secured transaction under the revised definition even though their every intention was to create a lease.
>
> Distinguishing Sales and Leases: A Primer on the Scope and Purpose of UCC Article 2A, 25 U. Mem. L. Rev. 873, 882 (1995).

"In determining whether an agreement constitutes a true lease or a disguised security agreement requires a two-step analysis. The first step involves the application of what has been called 'the bright line test.' The first element concerns the Debtor's right to terminate the agreement". In re UNI Imaging Holdings, LLC, 423 B.R. at 416. In other words, "[t]he first part of the test looks at whether the lessee may terminate the agreement during its term". In re Gateway Ethanol, L.L.C., 415 B.R. 486, 499 (Bankr. D. Kan. 2009). "The second part looks at what are referred to as the Residual Value Factors. If the lessee may not terminate the lease during its term and any one of the Residual Value Factors is present, the transaction is a sale without consideration of any other facts and circumstances." Id. "If one or more of the residual value factors is found to exist with respect to a non-terminable 'lease' agreement, then it is a disguised security agreement as a matter of law." In re UNI Imaging Holdings, LLC, 423 B.R. at 416.

In the instant case, the *Lease Agreement* does not provide an explicit right for the Plaintiff to terminate it during the lease term. It then falls on the Plaintiff to establish any one of the "residual value factors", In re UNI Imaging Holdings, LLC, 423 B.R. at 416, set forth in 19 L.P.R.A. § 451(37).

The Plaintiff sustains that because the Defendant must transfer the title of the Vehicle for no additional cost to her at the end of the lease, considering that the residual was $0.00, she satisfies the residual value factor in 19 L.P.R.A. § 451(37)(d). See *Motion for Reconsideration*, Docket No. 59, p. 19; *Amended Complaint*, Docket No. 9, p. 3, ¶ 13; *Answer to Amended*

*Complaint*, Docket No. 40, p. 2, ¶ 13.  The Defendant contends that the Plaintiff waived her rights under 19 L.P.R.A. § 4510(37)(d) and notes that "there is no [*sic*] a single instance in which the Plaintiff discuss [*sic*] or address [*sic*] the principle issue of renunciation" (Docket No. 65, p. 18, ¶ 23).

The court finds that the Plaintiff satisfies the requirements under Section 1-201(37) of the Puerto Rico UCC, 19 L.P.R.A. § 451(37), to declare the *Lease Agreement* into a security interest transaction over the Vehicle because the Plaintiff could not terminate it and because she had the option to become the owner of the Vehicle for no additional consideration or nominal additional consideration upon compliance with the lease agreement.  Moreover, the parties cannot stipulate in the contract the nature of the transaction.  See *e.g.* In re Phoenix Pipe & Tube, L.P., 1993 WL 204165 at *3, 1993 WL 204165 at *1, 38 U.C.C. Rep. Serv. 2d (Callaghan) 28 (E.D. Pa. 1993) (considering the economic realities of the transaction beyond the language of the agreement which stated as follows: "Lessor and Lessee intend that this Lease be constructed as creating a Lease of the Equipment and not as creating a secured transaction under the Uniform Commercial Code.")

Notwithstanding the above, the court must analyze if, under Puerto Rico law, 19 L.P.R.A. § 451(37) is waivable as a right, and whether or not the Plaintiff waived such right in the instant case.

Article 4 of the Civil Code of Puerto Rico states as follows:

> Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person.

31 L.P.R.A. § 4.

For purposes of Article 4, *supra*, "contrary to the law" means that some legal statute declares a certain right unwaivable.  See *e.g.* 29 L.P.R.A. § 185i ("The right of an employee who is discharged from his employment without just cause, to receive the compensation provided in § 185a of this title, is hereby declared to be unwaivable"); 29 L.P.R.A. § 281 ("It is

hereby declared that the additional compensation on the basis of double time fixed by §§ 271-288 of this title for extra hours of work may not be waived"); 31 L.P.R.A. § 1253 ("The purchaser's right of cancellation, as provided in this subsection shall not be subject to waiver by the purchaser, and any provision of the purchase contract or any other timeshare or vacation club document purporting to constitute such a waiver shall he deemed null and void."). "Public interest or public order" has been defined as a series of norms and ideals in a society that are not always codified in the law and fill the gaps between what has been made law and what has not been expressly made into law but would otherwise harm, if tolerated, the general interest. Martínez Marrero v. U.S. District Court for the District of Puerto Rico, 180 D.P.R. 579, 589 (2011), citing J.A. Doral, La noción de orden público en el Derecho civil español, Ed. Universidad de Navarra, Pamplona, 1967, p. 18. In Martínez Marrero v. U.S. District Court for the District of Puerto Rico, *supra*, the U.S. District Court for the District of Puerto Rico requested the Supreme Court of Puerto Rico, *via* interjurisdictional certification, to interpret an agreement made between a patient and a doctor to arbitrate any possible malpractice complaint and whether or not it was enforceable under Puerto Rico's Commercial Arbitration Act, 32 L.P.R.A. § 3201. The Supreme Court of Puerto Rico ruled that such an agreement violates "public order" because it impedes a harmed patient from seeking judicial intervention and because public health and a patient's integrity are beyond contractual freedom. Id. at 590.

In the *Lease Agreement,* the Plaintiff acknowledges as follows:

LEASE: You agree to **lease** from us [Popular Auto] and we agree to **lease** to you the vehicle identified in any corresponding schedule, together with any replacement parts, additions and repairs the Vehicle under the term stated in this Vehicle Lease agreement or in any corresponding schedules (the "Lease"). You authorize us to correct obvious errors in this Lease and to insert the Lease number, the serial number and other data identifying the Vehicle, following our execution of the Lease. **You agree that this Lease is a Financial lease contract in accordance with Act. No. 76 of August 13, 1994, known as "Act to Regulate Personal Property Lease Contracts" as amended, <u>any</u> <u>other</u> <u>provisions</u> <u>of</u> <u>law</u> <u>notwithstanding</u>**.

…

TITLE: You understand that the Vehicle is and remains our property [referring to Popular Auto] and we [meaning Popular Auto] will have sole title to the Vehicle during the entire Term. **You agree this is a "Finance Lease" pursuant to the**

-16-

**provision of Act. No. 76 and not one intended to as a security interest for purposes of Act. No. 208 of August 19, 1996, as amended, known as the "Commercial Transaction Act".**  If this Lease is ever determined to be other than a financing lease, you hereby grant us a security interest in the Vehicle and agree that the financing statement will create a perfected security interest in our favor.  YOU HEREBY GIVE US POWER OF ATTORNEY TO SIGN AND FILE THE FINANCING STATEMENTS.  YOU AGREE TO PAY OUR FILING AND OTHER ADMINISTRATIVE AND PROCESSING FEES.  You will not allow any liens or encumbrances to be placed on the Vehicle and will notify us immediately in case any lien or encumbrance is placed on the Vehicle. If we supply you with labels indicating that the Vehicle is owned by us, you shall affix such labels to and keep them in a prominent place on the Vehicle.

Docket No. 57, pp. 4-5, ¶¶ 2 and 4 (emphasis and underline supplied).

Upon agreeing that the *Lease Agreement* would be governed by Act. No. 76 of August 13, 1994, known as "Act to Regulate Personal Property Lease Contracts" as amended, **"any other provisions of law notwithstanding"**, the Plaintiff expressly waived the application of any right she had and/or may have had under 19 L.P.R.A. § 451(37).  Such waiver is "not contrary to law, to public interest or public order, or prejudicial to the interest of a third person". 31 L.P.R.A. § 4.  Therefore, the court finds that such waiver is valid and enforceable.

*(J)    The court erred in applying the elements of a waiver via Summary Judgment when intent is a factual issue in controversy*

The Plaintiff avers that "the question of the subjective intent of a party cannot be ruled through summary judgment since this is a factual issue in controversy" and that the "Court made a factual determination on plaintiff's intent without any party requesting such factual determination".  *Motion for Reconsideration*, Docket No. 59, p. 19, Section J.

From the outset, the Plaintiff was the movant of the motion for judgment on the pleadings, which the court considered as a motion for summary judgment under Fed. R. Civ. P. 56 because it could not "rest solely on the pleadings to consider the merits of the Plaintiff's *Motion for Judgment on the Pleadings* (Docket No. 41)" as the "parties' motions hinge upon the *Lease Agreement*, which was not incorporated into the pleadings of the *Complaint* (Docket No. 1), the *First Amended Complaint* (Docket No. 9) or the *Answer to Amended Complaint* (Docket No. 40)".  *Opinion and Order* (Docket No. 57, p. 6, lines 22-27).  Thus, it was the Plaintiff who

requested a summary resolution of the instant case without an evidentiary hearing and without disputing the only evidence before the court's consideration, to wit, the *Lease Agreement*. The Plaintiff did not aver prior to the *Opinion and Order* that there were material issues of fact in controversy. Quite the contrary: in her *Reply to the Defendant's Opposition*[7] *to Plaintiff's Motion for Judgment on the Pleadings*, the Plaintiff expressly acknowledged that "entry of partial judgment is proper in the instant case since there are no genuine issues of material facts" (Docket No. 46, p. 4, Section C).

As a general rule, "[w]hen the issue involved in the motion for summary judgment is the contracting parties['] intent, summary judgment is generally precluded **except in cases where the supporting evidence is so sufficiently one sided that no reasonable person could differ**." P.C.M.E. Commer. S.E. v. PACE Mbrshp. Warehouse, 952 F. Supp. 84, 87 (D.P.R. 1997), citing Blanchard v. Peerless Insurance Co., 958 F.2d 483, 488 (1st Cir. 1992). While "an argument between parties about the meaning of a contract is typically an argument about a 'material fact,'" Boston Five Cents Sav. Bank v. Secretary of Dept. of HUD, 768 F.2d 5, 8 (1st Cir. 1985), "summary judgment is not necessarily foreclosed". Allen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir. 1992). "Even if there is ambiguity in the language … the evidence presented about the parties' intended meaning may be so one-sided that no reasonable person could decide the contrary." Boston Five Cents Sav. Bank v. Secretary of Dept. of HUD, 768 F.2d at 8. Also see America First Inv. Corp. v. Goland, 925 F.2d 1518, 1522 (D.C. Cir. 1991) ("summary judgment may be appropriate in a contract case even if the contract is ambiguous so long as there is no evidence that would support a conflicting interpretation of the agreement"). A good illustration of the rule is contained in Foster Medical Corp. Employees' Pension Plan v. Healthco, Inc., 753 F.2d 194 (1st Cir. 1985), where plaintiff alleged that the defendants had failed to abide by certain provisions of an agreement for the transfer of designated assets and liabilities. The U.S. Court of Appeals for the First Circuit ("First Circuit") found the challenged provisions to be ambiguous, but noted that defendants had adduced evidence probative of the

---

[7] The Defendant's *Opposition to Plaintiff's Motion for Judgment on the Pleadings* included the waiver argument, as previously discussed.

parties' intent while plaintiffs, for their part, had "offered no substantive evidence to challenge [this proof]." Id. at 198. The First Circuit concluded that, in such circumstances, plaintiffs had "failed to establish the existence of a genuine issue of material fact" concerning the meaning of the agreement. Id. Accordingly, the First Circuit upheld a summary judgment in the defendants' favor, notwithstanding the ambiguity. Id. at 198-99.

In the instant case, the only evidence presented is documentary, that is, the *Lease Agreement*, and the Plaintiff did not contest it. Hence, both parties are bound to it, as it is the contract between them. See Article 1044 of the Civil Code of Puerto Rico, *supra*. Its interpretation constitutes a substantive legal controversy governed by Article 1233 of the Civil Code of Puerto Rico, which sates as follows:

> If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.
>
> If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.
>
> 31 L.P.R.A. § 3471.

The First Circuit, citing Marina Industrial, Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 72 (1983), has ruled that Article 1233, *supra*, is strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties. See Borschow Hosp. & Medical v. Castillo, 96 F.3d 10, 15 (1st Cir. 1996); Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D.P.R. 1993), citing Marina Ind. Inc. v. Brown Boveri Corp., 114 D.P.R. at 72. The terms of a contract are clear when they are "lucid enough to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without necessitating for their understanding any reasoning or illustration susceptible to challenge". Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959). Moreover, in Andreu Fuentes v. Popular Leasing, 184 D.P.R. 540, 567-568 (2012), the Supreme Court of Puerto Rico ruled that when the terms of a contract are sufficiently clear as to comprehend what is being agreed, the literal sense of its stipulations shall

be observed and courts cannot decide what the parties allegedly intended to contract or not.  "A determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law."  Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 554 (B.A.P. 1st Cir. 2005).  Also see Allen v. Adage, Inc., 967 F.2d at 689 ("The question of whether a contract term is ambiguous is one of law for the judge.")

The *Opinion and Order* established as an uncontested material fact through the undisputed evidence attached and/or referenced in the parties' motions that the *Lease Agreement* between them provided as follows:

> LEASE: You agree to **lease** from us [Popular Auto] and we agree to **lease** to you the vehicle identified in any corresponding schedule, together with any replacement parts, additions and repairs the Vehicle under the term stated in this Vehicle Lease agreement or in any corresponding schedules (the "Lease").  You authorize us to correct obvious errors in this Lease and to insert the Lease number, the serial number and other data identifying the Vehicle, following our execution of the Lease.  **You agree that this Lease is a Financial lease contract in accordance with Act. No. 76 of August 13, 1994, known as "Act to Regulate Personal Property Lease Contracts" as amended, <u>any</u> <u>other</u> <u>provisions</u> <u>of</u> <u>law</u> <u>notwithstanding</u>**.
>
> …
>
> TITLE: You understand that the Vehicle is and remains our property [referring to Popular Auto] and we [meaning Popular Auto] will have sole title to the Vehicle during the entire Term.  **You agree this is a "Finance Lease" pursuant to the provision of Act. No. 76 and not one intended to as a security interest for purposes of Act. No. 208 of August 19, 1996, as amended, known as the "Commercial Transaction Act".**  If this Lease is ever determined to be other than a financing lease, you hereby grant us a security interest in the Vehicle and agree that the financing statement will create a perfected security interest in our favor.  YOU HEREBY GIVE US POWER OF ATTORNEY TO SIGN AND FILE THE FINANCING STATEMENTS.  YOU AGREE TO PAY OUR FILING AND OTHER ADMINISTRATIVE AND PROCESSING FEES.  You will not allow any liens or encumbrances to be placed on the Vehicle and will notify us immediately in case any lien or encumbrance is placed on the Vehicle.  If we supply you with labels indicating that the Vehicle is owned by us, you shall affix such labels to and keep them in a prominent place on the Vehicle.
>
> Docket No. 57, pp. 4-5, ¶¶ 2 and 4 (emphasis and underline supplied).

The Plaintiff did not allege or demonstrate that the foregoing terms of the *Lease Agreement* were ambiguous in her *Motion for Judgment on the Pleadings* (Docket No. 41), *Reply to*

*Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings* (Docket No. 46) and/or *Motion for Reconsideration* (Docket No. 59). Conversely, the court finds that the terms of the *Lease Agreement* are uncontested and that they are clear and unambiguous. Hence, the court cannot delve into the parties' intentions pursuant to Article 1233 of the Civil Code of Puerto Rico, *supra*, and instead is bound to observe its clear terms and stipulations. Contrary to the Plaintiff's assertion that "it was improper for the court to make [a waiver] determination" on "factual rulings" not contained in her motion for judgment on the pleadings (considered by the court as a motion for summary judgment), under Fed. R. Civ. P. 56(g)[8], even if summary judgment is not granted, the court has the authority to determine the material facts which are genuinely not in dispute, and establish those facts as undisputed for trial. "The purpose of the rule is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." D'Iorio v. Winebow, Inc., 2014 U.S. Dist. LEXIS 177464 at \*51 (E.D.N.Y. 2014), quoting Guilani v. Bak (In re Bak), 2013 Bankr. LEXIS 713 at \*9, 2013 WL 653073 at \*3 (Bankr. D. Conn. 2013) (denying motion for summary judgment but establishing through a Fed. R. Civ. P. 56(g) order the legal framework of the adversary proceeding). The decision of the court to enter an order limiting relief under Fed. R. Civ. P. 56(g) "is a matter of discretion." In re Bak, 2013 Bankr. LEXIS 713 at \*\*9-10. Moreover, when confronted with a motion for summary judgment, a court "should state the record the reasons for granting or denying the motion". Fed. R. Civ. P. 56(a). That is what the *Opinion and Order* did upon denying the Plaintiff's motion for summary judgment. Therefore, the Plaintiff's request to reconsider the waiver applied in the *Opinion and Order* because the parties' intent was not raised in her motion for summary judgment or because it is an alleged factual issue in controversy is hereby denied.

---

[8] Fed. R. Civ. P. 56 is applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7056.

*(J)*    *The rationale of* <u>*Nieves Vélez v. Bansander*</u>*, supra, is not the applicable law today because the law was amended after that case to state that the lessor is not liable for the damages that the lessee may cause to third parties while operating the motor vehicle*

The Plaintiff avers that the court erred in weighing the rational in <u>Nieves Vélez v. Bansander</u>, *supra*, to support the notion that the Lease Act is more specific than the Puerto Rico UCC in resolving the conflict of laws. *Motion for Reconsideration*, Docket No. 59, pp. 21-22, Section K.

Upon this court's ruling in Sections C and D, *supra*, this issue will not be addressed.

Conclusion

For the reasons stated herein, the Plaintiff's *Motion for Reconsideration* (Docket No. 59) is hereby granted in part as to her requests for clarifications and additional findings of fact but denied on all other grounds.

SO ORDERED.

In San Juan, Puerto Rico, this 13th day of March, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge